IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN HUEY DANIELS<br>    Plaintiff,<br><br>    v.<br><br>WARDEN BLADES, DEPUTY WARDEN BENNETT, DEPTY WARDEN WESSELS, SERGEANT DOBLER, CORPORAL TRANA, CORRECTIONAL OFFICER BROOKS,<br>    Defendants. | Case No.  1:15-CV-148-BLW<br><br>**MEMORANDUM DECISION** |

## INTRODUCTION

The Court has before it Defendant's Motion for Summary Judgment (Dkt. No. 34). The motion is fully briefed and at issue.  For the reasons explained below, the Court will grant the motion.

## FACTUAL BACKGROUND

Plaintiff Daniels, an inmate in the custody of the Idaho Department of Correction (IDOC), has sued several current and former employees of IDOC claiming they failed to protect him from assaults that occurred in 2014.  More specifically, Daniels has sued (1) Warden Blades; (2) Deputy Warden Bennett; (3) Deputy Warden Wessels; (4) Sgt. Dobler; (5) Corporal Trana; (6) Sgt. LaRochelle; and (7) Officer Brooks.[1]

---

[1] Three other defendants, all associated with the nursing staff, were dismissed in an earlier decision.  *See Order (Dkt. No. 16).*

**Memorandum Decision – page 1**

Daniels alleges that he was placed in a section of the prison – identified as the D-2 tier – that also housed members of a violent gang, the Aryan Knights (AK). Daniels alleges that it was well-known among these gang members – and among prison staff – that he had dropped out of that gang and hence was targeted for retribution. He alleges that because the prison staff ignored this danger, he was assaulted twice and sustained injuries to the tendons and ligaments of his hand.

He has brought this lawsuit under § 1983 seeking damages for the injuries he suffered to his hand. *See Amended Complaint (Dkt. No. 10)*. The defendants have moved for summary judgment, arguing that Daniels failed to exhaust his prison remedies.

## LEGAL STANDARDS

Summary judgment is the proper procedural vehicle to raise the affirmative defense of exhaustion. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but instead is the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The Court must view the evidence in the light most favorable to the non-moving party and must not make credibility findings. *Id.* at 255. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence, like affidavits or deposition excerpts, but may simply point out the absence of evidence to support the non-moving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). The burden then shifts to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and, by "affidavits, or by the depositions, answers to interrogatories, or admissions on file," point to the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324.

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Exhaustion is intended to give "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.

**Memorandum Decision – page 3**

By its plain terms, however, the PLRA requires prisoners to exhaust only those avenues of relief that are "available" to them. *See* 42 U.S.C. § 1997e(a).

A defendant bears the burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant does so, "the burden shifts to the plaintiff to show that the administrative remedies were unavailable." *Albino,* 697 F.3d at 1031. Confusing or contradictory information given to a prisoner "informs [the] determination of whether relief was, as a practical matter, 'available.'" *Brown,* 422 F.3d at 937. Administrative remedies are deemed unavailable if the prisoner shows the required procedural steps were "not known and unknowable with reasonable effort." *Albino*, 697 F.3d at 1037. It is not enough that the prisoner was subjectively unaware of the proper administrative procedures; exhaustion may be excused only if that lack of awareness was also "objectively reasonable." *Id.* at 1038.

## ANALYSIS

Here, the IDOC has set up a three-step process for inmates to pursue grievances concerning their treatment at the jail. The inmate with a concern is required to seek an informal resolution of the matter by completing an Offender Concern Form (OCF), addressed to the staff member most directly involved with the inmate's issue. *See Verhage Affidavit (Dkt. No. 34-13)* at ¶ 4. If the OCF does not resolve the matter, the inmate must file a grievance form within 30 days of the incident giving rise to the grievance. *Id.* at ¶ 6. Finally, IDOC's decision on the grievance may be appealed. *Id.* at ¶ 12. Upon proper completion of all 3 steps, the inmate's grievance process is complete. *Id.* at ¶ 14.

**Memorandum Decision – page 4**

In this lawsuit, Daniels seeks monetary compensation for the injuries to his hand suffered in the assault on November 10, 2014.  The record contains the grievances filed by Daniels, and those grievances never mention the alleged assault on November 10, 2014.  *See Exhibit C (Dkt. No. 34-15).*  Daniels also alleges he was assaulted about three weeks prior to the November 10, 2014, assault, *see Daniels Deposition (Dkt. No. 34-12)* at p. 54, but that earlier assault is not mentioned in any of his grievances.  *See Exhibit C, supra.*

Daniels also failed to file any grievance when he was moved to the D-2 tier on September of 2014, despite knowing immediately that it housed AK members.  *See Daniels Deposition, supra,* at p. 48 (stating that he knew this was an AK unit "around a half hour after I was in the cell and housed and stuff").  He did not file any grievance complaining that he was housed with AK members and was in personal danger because of his prior affiliation with that gang until December 23, 2014, long after the assault on November 10, 2014.  *See Exhibit C, supra.*  His failure to immediately complain is explained in his deposition testimony.  When asked in his deposition if he was "concerned for his safety" when he was moved to the D-2 tier knowing it contained AK members, he responded, "Not really."  *See Daniels Deposition, supra,* at p. 50.

Daniels seeks compensation for injuries to his hand sustained on November 10, 2014.  He has never submitted any grievance concerning that assault to give the IDOC the opportunity to address it as part of the administrative dispute resolution process.  The IDOC's process is simple and easy to understand.   This is just the sort of grievance

**Memorandum Decision – page 5**

process that must be exhausted pursuant to the PLRA.  The failure to exhaust is fatal to Daniels' lawsuit, and hence the Court will grant the motion for summary judgment.

## ORDER

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment (Dkt. 34) is **GRANTED,** and the Plaintiff's Complaint dismissed with prejudice**.**

2. The Court will issue a separate Judgment as required by Rule 58(a).

DATED: March 3, 2017

_____
B. Lynn Winmill
Chief Judge
United States District Court